If it may please the court, I am Thor Hearn, and I represent the Michigan landowners bringing this case. I have requested five minutes of rebuttal to be reserved. The federal government took these individuals, Michigan individuals in Muskegon, Michigan, small businesses and families' property in violation of the Fifth Amendment by not compensating them. The only avenue they have by which to vindicate their self-executing right to be justly compensated, guaranteed by the Fifth Amendment, is to bring an action in court. Now, the Tucker Act does provide a course where that action could be filed in front of the Court of Federal Claims, which is not an Article III court. Instead, and in addition, actually, these individuals wanted their case heard in an Article III court and with a jury, as guaranteed by the Seventh Amendment, and hence they filed their action in the Eastern District of Michigan. As such, this provides, this case arises, raises several questions of constitutional import, but we don't necessarily have to get to the constitutional question of the legitimacy of the Tucker Act if you construe Section 1331 to hold that the district court has concurrent jurisdiction. What's the best case to support you on doing that? The best case on that would be Bowen, and it's cited in our briefing where the court said that the fact that the Tucker Act does provide for this, under the Little Tucker Act and the Big Tucker Act, jurisdiction in the Court of Claims, the Supreme Court in that footnote that we quote in Bowen, says that does not necessarily mean it's exclusive if you can find another grant of jurisdiction. Hence, we present... But they didn't say 1331 as another... They did not specifically address 1331. Correct, Your Honor. Isn't what the Supreme Court has said that the Tucker Act may not be dispositive if the statute under which you want to proceed itself provides a sufficient waiver of sovereign immunity? Yes, in terms of this waiver of sovereign immunity, our position as we've made clear in the briefing, Your Honor, is that the Fifth Amendment itself, as Justice Brennan said, and then the court in total adopted in First English, is a self-executing guarantee. So, there does not need to be some separate independent waiver by Congress of the right to seek compensation. And hence... How does that self-execution mean that there is an obligation? They don't have to pass an obligation in order for there to be an obligation. There's a constitutional obligation. Correct, Your Honor. But that's not the same as lifting sovereign immunity. You can have an obligation without waiving immunity. Well, what the Supreme Court has said most recently in the Arkansas Fish, they've reemphasized a whole line of cases where they say that there is a categorical obligation at the time of the taking... I'm distinguishing between the immunity and the obligation. It isn't the same thing to say, or I'm asking you whether it isn't the case that it's the same... It's not the same. Well, that's too many negatives. It doesn't seem to follow from the fact that there is an obligation, that there is a waiver of sovereign immunity. Those are two different things, aren't they? I don't believe so, Your Honor, and here's how I explain that. In terms of the waiver of sovereign immunity, the Fifth Amendment itself guarantees, as an integral component of when the government takes property, it must compensate you. Sure, but that's not a waiver of immunity. You could easily have... Well, let's think of it this way. Could Congress... Let's say you're in the new republic, ten years out of the Constitution being the Constitution, and you look in the Constitution, and it says takings have to be compensated. Right. And so the legislators say, well, we treat the Constitution seriously. Anytime the government takes, they should come to us, and we'll pass a bill and give them compensation. Can they do that or not? Well, the court in Monongahela said that that awarding of compensation is exclusively a judicial function. They did it in a case where the statute had put it in a court in Monongahela. The statute said, a court will decide this. The statute that did the taking said, we put this in a court. That can't control the issue of whether they could have done it a different way when that isn't the way that they did it. Well, as I recall the fact, Your Honor, in Monongahela, the Congress passed a law that said, we're going to take your lock and dam, and we're going to pay you X dollars for it. Right, and it said, and you can take this to the Court of Appeals, and you can take it to the Supreme Court. And they did under the court's general jurisdiction. Right, so they put it in a court. They put the resolution in court. And they said, having put it in court, the court has to be able to decide it, right, under the Constitution, under the content of the Constitution. But my question is, would it have been constitutional in the early days of the Republic just to comply with that constitutional provision by passing private bills? And you're saying no. I'm saying that they – You have to say yes or no. You can't say, well, things have changed. I would say no, in the sense that the private bill – So they – so our frame was all the people following the first hundred years of our Constitution just sort of got it wrong? Well, no, they – I'm saying if they paid you in a private bill, that's fine, and then you don't need to go to court. It is fine, right? What if there's a dispute? And then you have the access to go to court, which is what – You mean the Congress couldn't say, okay, we vote that this is the full coverage and give it to them, and that's the end of it? No, they could not. I mean, that would be the – But that's the way they did it for a hundred years. Well, that would be like Lee versus United States, Your Honor, which is where – That was a different kind of case. So you're saying that they couldn't do it that way? They couldn't do it by private bills? They cannot deny you – they could not, and I don't think they did, deny the right to seek compensation in court for a taking. And when you look at the early cases – For the first hundred years? I do not see that that's the case. The Lee case is an example of that, where they would sue, ultimately, the United States as the party responsible. There was also the Charles – Excuse me? Were they? What's that? It's not Lee versus the United States, is it? Well, that's the style of the case, is Lee versus the United States. They brought the case in the name of the two officials that were acting, the, quote, wicked ministers in that case. But it was a case that, as the court made very clear, the ultimate party responsible was, in fact, the United States. And so in those cases, when we do go back and look, the Charles River Bridge and there's others, the individual who lost property by action of the federal government could, in fact, bring these cases. I mean, there was certainly – We hold in your favor, in other words, we have to hold that it would be unconstitutional for Congress to create a system whereby takings were paid by the Congress itself. Go to the committee, present your claim to the committee, the committee makes a recommendation to the Congress, and the Congress passes a bill. That is unconstitutional. If it also precludes you from going to a court. If they do that and you accept it – You disagree on how much – I'm sorry, you disagree this is how much you're getting. That would be – we would have to be saying that that widely perceived and followed procedure was unconstitutional over all that time. That would be – that's how I read Monongahela, which says that – It's pretty radical. It's an exclusively judicial function to determine the compensation. I understand. So – and I understand in the earlier years they did do private bills. But the fact that they have an alternative remedy, which would be the Court of Claims or private bills, that's fine. It just cannot preclude the owner from seeking compensation in an Article III court. If it's the Court of Claims, it's fine, right? Well, the Court of Claims is not an Article III court, and that's our – Where are you getting – and are you basing that argument on the fact that they said it's a judicial issue? On the – I want to make sure I understand your question, Judge. Why does it have to be an Article III court? Well, that would be under Stern v. Marshall. It's what we call a private right. A private right is something that cannot, as Justice Roberts explained in that case, cannot be taken away from an Article III court and given to an Article I court. Only what they call public rights, rights created by Congress, can in fact be vested in an Article I court for adjudication. An example of that would be Social Security benefits, back pay, those kind of things. But when it's a self-executing right coming directly from the Constitution, it's a private right, which this is. I always thought a private public right was one that resolved disputes between the government as a whole and individuals. Well, when I read – That seems to be what they say in Crowell v. Benson. There's a difference between disputes between private parties and disputes as to money and disputes between the government and individuals as to who gets money. And, Judge Rogers, I'm referring to Justice Roberts' statement in Stern v. Marshall where he described that public right doctrine, and he said the public rights, those are things that arise from a congressional regulatory scheme. So when Congress creates rights between individuals and the government, those are the public rights. Was that a case where the federal government was a party? That was not, but he was explaining their doctrine. Well, the doctrine makes sense. Most of the rights between the government and individuals arise out of Congress, but it wasn't being stated in contradistinction to rights between the government and individuals that come straight from the Constitution. It's hard to imagine how that could be anything but a public right. Well, my time has expired, Judge Rogers. I'm sorry. Why doesn't the Lenore case take care of your argument that we should rely on the federal government? I don't believe it arises on the same facts because it does not deal with the self-executing nature of the Fifth Amendment that is opposed to a more broad argument that was made in that case. Good morning, Your Honors. Brian Toth from the Department of Justice representing the United States. For 130 years approximately, the Congress has required claimants seeking money from the United States for claims such as the ones brought by landowners to pursue those claims in a specialized court, now known as the Court of Federal Claims. This arrangement is entirely constitutional, consistent with the separation of powers, and it's one to which the Seventh Amendment's jury trial right does not apply. I want to start just by briefly disposing of the statutory question because I think that's been decided by Lenore. 1331 cannot be used to evade the limitations that are expressed in the Little Tucker Act, and when the Little Tucker Act and the Tucker Act are read in combination, it's apparent that Congress intended jurisdiction to be exclusive to the Court of Federal Claims for these types of claims when they're above $10,000. Not only does Lenore arrive at that and hold that as a matter of statutory interpretation, but the Federal Circuit itself and Broughton Lumber reached the same conclusion. What that means is the court does need to confront the constitutional challenge that is at issue here, and as far as the separation of powers or Article III argument. Could they come to the district court to simply get a declaratory judgment that this statute constitutes a taken? They could except where compensation is available. So as in the Duke Power case that involved a statute, the Price-Anderson Act, the Supreme Court said you can't get your declaratory relief because you could pursue compensation after the fact using the Tucker Act going to the Court of Federal Claims, and that precludes your equitable relief in the federal courts. If that compensatory remedy is not available or if it's inadequate, then the equitable relief has been allowed in the federal courts. And the best and most recent example of this was in the Horn cases from the Supreme Court over the past few years, where in the first Horn case, the Supreme Court found that a statute that USDA had used to bring an administrative fine against some raisin growers and handlers had precluded the growers' and handlers' ability to go to the Court of Federal Claims. And so the Supreme Court allowed the raisin growers to raise an uncompensable taking as a defense to the fine, and in the second Horn case found that that entirely exonerated the private party from paying the fine at all. So that was alternative available relief in the federal courts where the just compensation remedy in the Court of Federal Claims was not available. Judge Rogers, as you pointed out, prior to the Tucker Act, Congress required claimants to go and pursue private bills. The Lee case, to my recollection, didn't involve the payment of money, but relief that was either in the nature of returning the property to the claimants. Sometimes federal officers would be sued for to be ejected off the property or be sued in trespass. These were the types of creative remedies that plaintiffs had to resort to. Are you saying that Congress could constitutionally pass bills that took money and fix compensation? Not fix the compensation. I do think the Monongahela case makes clear that if it does affect the taking and assign review to a tribunal, then that tribunal does have the authority to determine the compensation. And the CFC does that here, but that doesn't mean that just because- You're acknowledging that it is a judicial question, but you're saying it does not have to be in an Article III court. That's right. And the city of Arlington case, although it wasn't a separation of powers case from the Supreme Court, both the majority and the Chief Justice in dissent agreed that agencies often do undertake adjudicatory functions without violating separation of powers. I wonder if you really want to concede that Congress couldn't do it by themselves. You're saying that they have to give it to a court, it just doesn't have to be an Article III court? No, I'm saying if they gave review to a court. Yes, if they simply passed a private bill and said nothing about the remedy- And they said this is how much we're giving you because we think this is full compensation. That would be the end of it. That would be the end of it. But what if property is clearly worth a million dollars by any measure, and they say we're taking it and here's $10,000? So the rail reorganization cases, I believe, address that. And that was a series of cases where Congress did authorize a taking and provided a process for adjudicating compensation. And the claimants said that that was not going to be enough. It was going to fall short. And the Supreme Court said, well, you can still go to the Court of Federal Claims afterward if you've fallen short. Alternatively, there have been arrangements where agencies have adjudicated just compensation. We cite a Seventh Circuit case and an Eleventh Circuit case in our brief about this. And then the review of that agency action is invested in the Court of Appeals by statute, and the Courts of Appeals have found no problem with that as a matter of separation of powers. So I think our best cases on demonstrating the waiver of sovereign immunity is necessary to just compensation claims. There are cases that are a little older, but the Schillinger case from the Supreme Court, as well as the United States against the lynch case, also from the Supreme Court, both involve, to different degrees, taking away of a remedy that is just compensation. In Schillinger, the Supreme Court said that even though a taking of property through an unlawful government action might fall within the text of the Fifth Amendment, the Tucker Act clearly precluded it because it was a tort,  and that just further demonstrates that there is a set of potentially compensable claims under the Constitution that the Tucker Act doesn't waive sovereign immunity for because they sound in tort. The lynch case, similarly, it involved a question of whether a taking had occurred of a war policy, war insurance policy that was a contract. The Court said it's a contract, it's property. It can't be taken, but the right to sue for compensation can be taken. So it's not something that happens nowadays because, as I said, for 130 years we've had the Tucker Act, and claimants, including the plaintiffs here, have known to go to the Court of Federal Claims to pursue that relief. So in Dickinson and Withrow, did that start in the Court of Claims? Dickinson? Is it the United States against Dickinson case? Yeah. It's the Frankfurter opinion, where actions were brought under the Tucker Act. But it's really unclear where they were brought. I don't know the answer. I don't know the case that closely. I'd be certainly happy to take a look at it. Okay. I mean, it is a takings case, I think. I mean, there are likely examples where the jurisdictional issue was assumed or went sub rosa, and that doesn't stand as precedent that the jurisdiction actually existed in the district courts. But what if they had brought this as a 1983 claim? What would have happened then? So that would be against a state official, and my understanding is those are allowed. You know, but 1983 is a fiction to get around sovereign immunity. The equivalent would be sued against a federal officer under Bivens, and although we didn't cite the cases in our briefs, there are numerous district court decisions saying that Bivens remedies do not lie for just compensation claims. So I suppose I should just emphasize that the historic practice, both before and after the enactment of the Tucker Act, is important to understanding that the sovereign immunity waiver is still critical for bringing just compensation claims. Before the Tucker Act, as we've discussed, the private bills were the avenue for claimants to obtain money, and the Langford case in particular lamented before the enactment of the Tucker Act that there wasn't a monetary remedy for pursuing just compensation in the courts. Were there ever instances, do you suppose, before the Tucker Act, that people were unsatisfied with how much they got from Congress? Yeah, I imagine so. I think that... No examples of where they tried to get judicial review of congressional action. Not that I'm aware of. I mean... It seemed a little strange. Yes. I mean, the problem that Congress had was there were so many claims, and I think this, you know, got even worse after the Civil War when property was confiscated for use during the war, that Congress just had such a backlog of having to deal with them through private bills, it wasn't an efficient system. So, they assigned them to this specialized court, whose entire business would be to consider monetary claims. And, you know, for the past 130 years, that's been an acceptable way of doing things. The Bakelite and Williams cases from the early 20th century considered the question whether the Court of Claims, which is the former name of the Court of Federal Claims, was an Article I or an Article III court, and determined, you know, when it was an Article III court that that did not... I'm sorry, when it was denominated as an Article I court, that that did not violate the separation of powers. I mean, and I want to say the historic practice after the Tucker Act has been that in the district courts, as we discussed, if the Tucker Act remedy is not available, then courts will allow other equitable types of relief. So, this is thought of as an exception to the sovereign immunity doctrine, but it's only for equitable relief. And that's the Lee and Larson line of cases. So, both before and after the Tucker Act, the historic practice demonstrates that the sovereign immunity waiver has been important. I think the most important case that the plaintiffs rely on to the contrary is the first English case. And it was a case in state court against a county, which is a division of a state. And, I mean, there were statements in that case talking about the self-executing right under the takings clause to just compensation. But I just don't think that that case, and the one footnote discussing the Solicitor General's argument about the United States' own sovereign immunity, could be read to bring down this regime that Congress has had in place for over a century. It's just too... But that the Supreme Court has repeatedly said, starting way, way back when they said, any court that's created by the Congress, its jurisdiction is defined by the Congress. And then the courts have repeatedly said the Tucker Act is the definition, at least in part. And that includes that claims brought against the United States, if founded on the Constitution, among other things, have to be brought under the Tucker Act is the waiver of immunity, and they have to be brought in the court of claims. That's right. I mean, it's not like there's anything out there that we could look to to say, well, here's a time when they really didn't in exactly this kind of a case. At least I have never found one. No, I have not either. And that's right. And not only can Congress define the jurisdiction of the Article I courts, but it can define the jurisdiction of Article III courts, as it did in the Little Tucker Act. And even the federal question jurisdiction, it's not compulsory under the Constitution. The intriguing question to me is not, you know, what is the force of the Tucker Act and the Little Tucker Act and all of that, which we've just been talking about. But why is it okay for that to come smashing up against the Seventh Amendment? So the Seventh Amendment case law has turned when, first of all, the Seventh Amendment case law makes clear that it's settled law, that claims against the United States for regulatory takings are not, they don't fall, they don't trigger the Seventh Amendment. The cases that make that distinction, there are a lot of other types of cases that are involved, but they all turn on the same issue of public rights versus private rights. And because a public right is, it includes suits against the United States where a sovereign immunity waiver is necessary, the same reasoning that demonstrates no violation of Article III also demonstrates no violation of the Seventh Amendment. I don't like that answer, but. Yeah, it's, you know, in some ways, you know, there is a lot that's not wholly intellectually satisfying when you're trying to mesh over 100 years of Supreme Court case law and reconciling more recent precedents with earlier cases. But, you know, it is all something that the court's task is to harmonize. So unless there are any other questions. There are not. Thank you, Counsel. Judgment be affirmed. Rebuttal. Thank you, Your Honor. You mentioned the Seventh Amendment, so I'll address that point particularly. The case that's most on point is Del Monte Dunes. The discussion there, of course, that was a state case, but the discussion of the Seventh Amendment and the right to jury trial, particularly where Justice Scalia gives the history of the Seventh Amendment, that was a 1983 case. But they very specifically talk about it in the context of a takings and look at that analysis. And in Del Monte Dunes, the court made a very distinct difference between taking cases where it's a direct condemnation where the government confesses its liability, pays the money, versus cases where the taking is not, it's an inverse condemnation case. And in Del Monte Dunes, the court's decision is very clear that the right, the Seventh Amendment right of jury trial would extend to those kind of cases, not a direct taking, but an inverse condemnation case. Or at least to the question whether there had been a taking. Whether there had been a taking and then the nature, the compensation would be part of the facts for the jury. But in that case, where the owner is put to the task of bringing the case into court as opposed to the government up front admitting it has taken the property, there is the court's analysis would hold a right to a jury trial. Wasn't Del Monte Dunes a 1983 action? It was indeed a 1983 action. Wasn't that kind of an enormous distinction? It was a distinction, but when you read the court's reasoning, they specifically, it was a 1983 action for compensation for a taking against the city of Monterey. So in that case, the result was to obtain compensation for Fifth Amendment right to compensation. But not involving a situation of an absolute requirement. If it came against the federal government, the federal government has to have waived its sovereign immunity. That's not really comparable to saying that a city, which might have some kind of immunity, is in exactly the same situation. Well, I would see the court's reasoning doesn't make that distinction. The court's reasoning in its analysis of the Seventh Amendment does not. Why would it have to make that distinction if the federal government isn't involved? Well, it does analogize the history, and it discusses particularly Justice Scalia's concurrence, which the majority adopted as well, a history of the Seventh Amendment. In the Seventh Amendment, neither the text of the amendment nor the implementation of it suggests that there has to be a waiver of sovereign immunity for the Seventh Amendment guarantee. It doesn't say the Seventh Amendment applies to common law actions, and it would apply to these kind of actions. It doesn't say in the amendment nor in any case, but it doesn't apply against the government. Now, if it is a, what you call these public rights, fits in that public right doctrine, which are rights created by Congress, then you would have that issue. But if it were Congress could abrogate the right to jury trial, but where the right isn't something Congress created, the right is in this case, the Fifth Amendment right out of the Constitution itself. In that case, that you can't abrogate your right to a jury trial under the Seventh Amendment. There's no exception I know of, nor is there any case I know of where the court's done that. I mean, if you look at Crowell versus Benson, the reasoning is that the particular, if there's a particular kind of suit, like maybe a tort suit, right? The Federal Tort Claims Act doesn't allow for jury trials. Jury trials in ordinary tort suits for negligence seem to be exactly what the Seventh Amendment was all about. But because you're suing the United States, it's a public action, and so therefore there's no jury trial. I mean, that's the reasoning. Now, you can distinguish it by saying, well, it's different because it comes from the Constitution. But I'm not seeing what the logical connection is between the source of the right and whether the Seventh Amendment applies. I would offer two suggestions, Your Honor, in terms of that. The first would be, as I've said, that unlike a tort claim, which is not protected in the Constitution, the right to sue the- Well, but the jury trial with respect to tort claims is protected. Right. So- By the Seventh Amendment, as long as it's more than $20. Correct. Right? So- Okay, go ahead. But the distinction I would make is- You're making a distinction, but it's a distinction that doesn't seem to relate to the underlying doctrine. That's what I meant. I understand there's a distinction you're drawing. I'm just not seeing why it should make any difference. And here's why I would say it makes a difference, is the tort claims are- that is created by the Federal Tort Claims Act, which is a congressional-created mechanism, whereas the Fifth Amendment itself is embedded right in the text of the Constitution. I understand. That's your distinction. I'm asking why that distinction should make a difference when we're talking about the Seventh Amendment. Well, when we talk about- Because they both come from the Constitution, and it's one document, 27 pages or whatever? I mean, why does that fact make a difference with respect to the Seventh Amendment? As I understand the public versus private right analysis, if it is a public right, then Congress has the ability to prevent a jury or- Oh, so it all depends on whether it's a public right or not. Public or private right. And the Fifth Amendment would be a private right. Okay. Thank you, Your Honor. Thank you, Counsel. Thank you. The case will be submitted. Clerk may call the next case.